Points decided.

JOSEPH LOVE v. SIERRA NEVADA LAKE WATER AND MINING COMPANY, WILLIAM GEORGE, JOHN BATES, CHARLES BATES, A. HOMPHREY, ADMINISTRATOR OF THE ESTATE OF P. HOMPHREY, DECEASED, JOHN RIDGWAY, FRANCIS WEDGWOOD, HENSLEIGH WEDGWOOD, AND CHARLES ROBE.

| 32 | 639 |
|----|-----|
| 82 | 657 |
| 32 | 639 |
| 88 | 297 |
| 32 | 639 |
| 120 | 611 |
| 32 | 639 |
| 127 | 577 |
| 32 | 639 |
| 134 | 367 |

SURPLUS AVERMENT IN COMPLAINT.—If the complaint in a foreclosure suit avers that the mortgage was executed by the defendant (thereby making it by averment a legal mortgage), and also sets out a copy of the same, and it appears on its face not to be a legal as distinguished from an equitable mortgage, the averment may be rejected as surplusage.

ALLEGATION IN COMPLAINT AS TO CONTRACT SET OUT.—When the plaintiff sets out in his complaint the contract sued on in the terms in which it is written, and then puts a false construction on its terms, the allegation repugnant to its terms should be regarded as surplusage.

RELIEF GRANTED WHEN MORTGAGE IS SET OUT IN COMPLAINT.—If the complaint avers that the mortgage sought to be foreclosed was made by defendant, and contains a copy of it, and also avers facts making it an equitable mortgage, and it appears to be in fact an equitable mortgage, the plaintiff is entitled to have it enforced as such.

STATEMENT MUST SPECIFY HOW EVIDENCE IS INSUFFICIENT.—If the statement on motion for a new trial does not specify the particulars in which the evidence is alleged to be insufficient, the appellate Court will assume the facts admitted in the pleadings as well as those found.

MORTGAGE OF CORPORATION.—A mortgage purporting to be the mortgage of a corporation, but signed by its trustees individually, and not by the corporation by its trustees, is not the legal mortgage of the corporation.

IDEM.—Though such mortgage does not bind the corporation as a legal mortgage, yet it does not follow that it may not be enforced in equity.

WHEN MORTGAGE MADE BY AGENT WILL BE ENFORCED IN EQUITY.—A mortgage on real estate, made by an agent for his principal, though inoperative at law for want of a formal execution in the name of the principal, is binding in equity if the attorney had authority and the failure to execute in the name of the principal resulted from accident or mistake, and will be enforced against the principal and subsequent lien creditors, and also against subsequent purchasers with notice.

IDEM.—Such mortgage does not require reformation, but is ripe for enforcement according to the methods peculiar to Courts of equity.

IDEM.—It is of no equitable moment whether the mistake in the execution of such mortgage was one of law, or one of fact.

CONTRACT FOR MORTGAGE NEED NOT BE UNDER SEAL.—A contract for a mortgage need not be under seal, and when made through an attorney in fact his authority need not be evidenced by an instrument under seal, nor is it indispensable that such contract should be executed in the name of the principal.

APPEAL from the District Court, Tenth Judicial District, Sierra County.

The following are the material allegations of the complaint in this case:

Joseph Love, the plaintiff in the above entitled action, and a resident of England, by his attorneys, Van Clief & Gear, shows to this honorable Court that on the 29th day of July, 1858, the Sierra Nevada Lake Water and Mining Company—which was then and still is a corporation duly organized under and by virtue of the laws of the State of California, whose principal place of business is at Forest City, in the County of Sierra—was indebted to the plaintiff and other residents of England, whose names plaintiff does not know, in the sum of one hundred thousand dollars, for money loaned to said company; and to secure the payment thereof said company on that day made, executed and delivered to John Ridgway, Francis Wedgwood, Josiah Bates, Hensleigh Wedgwood, and Charles Robe, its bond in the penal sum of two hundred thousand dollars, conditioned to pay said sum of one hundred thousand dollars, and a mortgage on all the property of said company in the State of California, more particularly described in said mortgage; said bond and mortgage being executed and delivered to the above named persons as trustees for the said persons to whom said company was indebted as aforesaid in said sum of one hundred thousand dollars for money loaned. That afterwards—to wit: on the 29th day of November, 1858—said company became indebted to the plaintiff and other residents of England, whose names plaintiff does not know, in the further sum of fifty thousand dollars, for money loaned and advanced by them to said company; and that, to secure the payment thereof, said company, on the said 29th day of November, 1858, made, executed and delivered to John Ridgway, Francis Wedgwood, Josiah Bates, Hensleigh Wedgwood, Charles Robe, and this plaintiff, a bond in the penal sum of one hundred thousand dollars, conditioned to pay said sum of fifty thousand dollars, with interest at the rate of twenty per

cent per annum, on or before the 24th day of November, 1859, and also a mortgage on all the property of said company in the State of California, more particularly described in said mortgage, conditioned to pay said last mentioned bond at maturity; said last mentioned bond and mortgage being executed and delivered to the obligees and mortgagees thereof as trustees for the use and benefit of the parties who loaned and advanced to said company said last mentioned sum of fifty thousand dollars, one of whom was the plaintiff. The plaintiff further shows that on or about the 5th day of October, 1859, the holders of said bonds and mortgages were induced to doubt their validity, and to cancel and release them of record, for the purpose of having executed and delivered to them (said mortgagees) by said company, a new and valid bond and mortgage for the said sums of money, and on the whole of the property of said company in the State of California. Whereupon the said company, by its trustees, at a regular meeting of said trustees, held at Forest City, on the 5th day of October, 1859, accepted the said cancellation and release of the two bonds and the two mortgages first above described, and ordered the release of said two mortgages to be entered of record in the office of the Recorder of the County of Sierra, which was done; and then and there agreed and resolved, in consideration of the releasing and cancelling of said two bonds and two mortgages first above described, and an additional advance and loan of ten thousand pounds sterling, to be made to said company by this plaintiff and other residents of England, to make, execute and deliver to John Ridgway, Francis Wedgwood, Hensleigh Wedgwood, Charles Robe, and this plaintiff, the promissory note of said company for the sum of forty thousand pounds sterling, and a mortgage, to secure the payment of the same, on all the water ditches, reservoirs, water rights, buildings, structures, and other property, real and personal, constructed or in the process of construction, belonging to said company in the State of California; said last mentioned note and mortgage to be held by said Ridgway,

Wedgwood, Robe, and this plaintiff, for the sole use, benefit and security of the said persons who had loaned to said company said sums of one hundred and fifty thousand dollars, and who should thereafter advance and loan to said company said sum of ten thousand pounds sterling. That afterwards—to wit: on the 16th day of April, 1860—said company, by its trustees, at a regular meeting of said trustees, held at Forest City, re-affirmed said last mentioned resolution and agreement in regard to said last mentioned note and mortgage; and then and there—to wit: on the 16th day of April, 1860, at said Forest City—for the consideration aforesaid, made and delivered the last above described promissory note of said company for the sum of forty thousand pounds sterling, with interest thereon from date till paid, at the rate of twenty per cent per annum, payable one day after the date thereof, to the order of said Ridgway, Francis Wedgwood, Hensleigh Wedgewood, Charles Robe, and this plaintiff; and to secure the payment thereof, then—to wit: on said 16th day of April, 1860—executed and delivered to the said Ridgway and other payees of said promissory note its (said company's) mortgage in the words and figures following, to wit:

" This indenture made the 16th day of April, A. D. 1860, between the Sierra Nevada Lake Water and Mining Company, a corporation, by their trustees, Josiah Bates of Sierra County, State of California, and Samuel S. Atchinson of Yuba County, State of California, of the first part, and John Ridgway, Francis Wedgwood, Hensleigh Wedgwood, Charles Robe, and Jos. Love, all of England, of the second part, witnesseth : That the said parties of the first part, for and in consideration of the sum of forty thousand pounds sterling, to them in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, do grant, bargain, sell, and convey unto the said parties of the second part, their heirs and assigns, all the property, real and personal, belonging to the said Sierra Nevada Lake Water and Mining Company aforesaid, a corporation duly existing under and by virtue of the laws of Califor-

nia, located and being situated in the County of Sierra, and
State of California, and consisting of water canals, ditches,
flumes, aqueducts, reservoirs, etc., now constructed or in pro-
cess of construction by said company, together with all the
right, title, or interest, in and to the present possession, and
the right to the possession of any and all the waters, or the
use and benefit of said waters for mining and other purposes,
of any stream or streams, or rivers, ponds, and lakes, within
the State of California, owned by said company of the first
part, or claimed by them, or now in their possession, together
with all and singular, the tenements, hereditaments and appur-
tenances thereunto belonging or in any wise appertaining.
This conveyance is intended as a mortgage to secure the pay-
ment of a certain promissory note bearing even date herewith,
made by the said Sierra Nevada Lake Water and Mining Com-
pany, by the said trustees to the parties of the second part,
in the words and figures following :

" [£40,000.]
    " One day after date, we promise to pay to the order of John
Ridgway, Francis Wedgwood, Hensleigh Wedgwood, Charles
Robe, and Joseph Love, the sum of forty thousand pounds ster-
ling, with interest thereon from date until paid, at the rate of
twenty (20) per cent per annum, for value received, this 16th
day of April, A. D. 1860.   And the said parties of the first
part shall well and truly pay, or cause to be paid, the sum of
money with interest thereon, according to the tenor and effect
of said note, then these presents to be null and void, otherwise
to remain in full force and effect.

    " In witness whereof the said parties of the first part, have
hereunto set their several hands and seals the day and year
above written.

" Josiah  Bates,            [seal.]
" Samuel  S.  Atchinson."  [seal.]

" STATE OF CALIFORNIA,
           " County of Sierra.
    " On this 16th day of April, A. D. 1860, before me, James
A. Clark, a Notary Public, in and for the County of ————,
personally appeared Josiah Bates and Samuel S. Atchinson, to
me personally known to be two of the trustees of the Sierra
Nevada Lake Water and Mining Company, and to be the per-
sons described in and who executed the foregoing instrument,
and they severally acknowledged to me that they executed the
same freely and voluntarily, and for the uses and purposes
therein mentioned, as and for the free act and deed of said
Sierra Nevada Lake Water and Mining Company.
    " In witness whereof I have hereunto set my hand and
affixed my official seal, the day and year above written.
       [L. S.]                          " JAMES A. CLARK,
                                          " Notary Public."


    And plaintiff avers that the above mortgage, with the
acknowledgmeht thereon, was duly recorded in the office of
the Recorder of the said County of Sierra, on the 17th day of
April, A. D. 1860, at 11 o'clock A. M. of that day ; and plain-
tiff avers that James A. Clark was a duly qualified Notary
Public for Sierra County at the time he took the above
acknowledgment.
    Plaintiff further alleges that at the time of the making,
execution and delivery of the last above described promissory
note and mortgage, Josiah Bates and Samuel S. Atchinson
were trustees of said company, and Josiah Bates was Presi-
dent thereof, and that as such trustees and President, the
said Bates and Atchinson had full and complete power and
authority for and on behalf of said company to make and
deliver said note, and to execute and deliver a good and valid
mortgage on all the property of said company in the State of
California ; and that, at and before the signing and delivery of
said last mentioned mortgage the said company, and its agents
and trustees, and particularly said Josiah Bates and Samuel
S. Atchinson, intended to subscribe and sign the last men-

tioned mortgage the name of said company, to wit, "The Sierra Nevada Lake Water and Mining Company," but omitted to do so by accident and mistake, or with the fraudulent intention on the part of said Bates and Atchinson, to cheat and defraud this plaintiff and the other persons who loaned and advanced to said company said sum of forty thousand pounds sterling, to secure the payment of which said last described mortgage was intended to be executed.

The Court below found among other facts that the Sierra Nevada Lake Water and Mining Company was a corporation duly organized, and that in consideration of forty thousand pounds loaned to it by the payees in the note, it executed the note; and, to secure the same, executed and delivered the mortgage in manner and form as alleged in the complaint, and that before and at the time of the execution of said mortgage, the said Bates and Atchinson, for and on behalf of said corporation, agreed with the said mortgagees and intended to subscribe and sign the said mortgagor the name of said corporation, to wit: "The Sierra Nevada Lake Water and Mining Company," but omitted to do so by mistake or accident. It does not appear that the subsequent lienholders had any notice of the mortgage except by the recording thereof. Judgment was rendered in favor of the plaintiff enforcing the mortgage against both the corporation and the subsequent lienholders. The corporation and the subsequent lienholders appealed.

The other facts are stated in the opinion of the Court.*

*James A. Johnson,* and *Creed Haymond,* for Appellants.

It can make no difference even if there was a mistake in the execution of the note and mortgage, such mistake being as to the legal effect of a written instrument, *i. e.,* a mistake of law. There can be no relief from such mistakes when a reformation is necessary to obtain it. (See Story's Equity Jur. Vol. I,

---

\* [NOTE.—A former opinion had been delivered and decision given by the Supreme Court in this case, but on petition of respondents' attorney a rehearing was granted.]

Sec. 138; Hilliard on Real Estate and Conveyances, 267.) We understand it to be a universal rule, that in no case will equity interfere to reform an instrument, except as between the parties thereto and their privies; as between these, Courts of equity may interfere. (See Story's Eq. Jur. Vol I, Sec. 165.) To enable a Court of equity to reform the mortgage, it must appear on its face to be executed by the corporation, for otherwise it is as it appears in law, or by legal construction, the instrument of some other person. The instrument is the mortgage of Bates and Atchinson, and not of the corporation. (See Story on Agency, Secs. 147–151; Parsons on Contracts, Vol. I, p. 119; *Richardson* v. *Scott River Water and Mining Company*, 22 Cal. 155.) Equity then cannot interfere as between the plaintiff and the corporation, but only as between the plaintiff and Bates and Atchinson. One who professes to act as agent for another must act in the name of his principal. (See *Clark's Lessees* v. *Courtney*, 5 Peters, 366; *Brierly et als.* v. *Mann*, 2 Cushing, 340; *Stackpole* v. *Arnold*, 11 Mass. 28.)

So far as concerns the plaintiff's allegation of accident or mistake it is defective, because he does not state wherein the accident or mistake consists. The note and mortgage being the instruments of B. and A., and it being alleged that they made the mistake or accident, plaintiff's business is with them, and not with the corporation. The corporation, and of course the lienholders, are not answerable for the mistakes, accidents or frauds of B. and A. (*Richardson* v. *S. R. W. Co.*, 22 Cal. 155; *Aston* v. *Wells et als.* 4 Wheat. 466.) From the last case cited it would appear to be no difference, so far as concerns even the corporation, whether B. and A. intended to defraud Love or not, or whether they omitted something by accident or mistake; for if they omitted to make the note and mortgage of the corporation, they have never been made.

*P. Van Clief*, for Respondent.

No signature of the corporation was necessary; its seal was sufficient. (*Clark* v. *Farmers' Man. Co.*, 15 Wend. 258;

Angell & Ames on Cor., Sec. 325.). We ask particular atten-
tion to the case of *Reynolds* v. *Glasgow Academy*, 6 Dana, 37.
A majority of the trustees of the corporation executed a deed
purporting to be the deed of the corporation, and signed it
with their several names, with a scrawl to each, without
designating them as their individual seals, and it did not appear
that the corporation had any regular seal; *held*, that the
scrawls must each be taken as the seal of the corporation, the
repetition of it on the same deed not being a matter of any
importance.   It is proper in equity to plead equitable mort-
gages as executed mortgages. . Indeed, they are so, by equita-
ble construction of the facts constituting them.    Equity
pronounces them equitable mortgages, in obedience to 'its
maxim "that equity looks upon that *as done* which ought to
have been done."   This maxim is the parent of all equitable
mortgages. (*Decker* v. *Kernan,* 2 Kern. 361; Van Sant Eq.
Pl. 91; Id. Eq. Prac. 92.)   A mortgage is not required to be
under seal in this State, and, as a simple contract, the mort-
gage set out in the complaint is well executed, without the
signature of the corporation, since it distinctly appears in the
body of the instrument, in the acknowledgment of it, and in
the resolutions of the corporation, that the corporation alone
was intended to be bound, and there is no question as to the
authority of Bates and Atchinson to bind it.   A mortgage in
this State does not touch either the legal or equitable title to
land, and it certainly does not touch or affect the possession.
(*Ingoldsby* v. *Juan,* 12 Cal. 576; *Green* v. *Hart,* 1 John. 589.)
A good and valid mortgage of real property may be executed
in this State by simple contract in writing, without seal.   A
mortgage creates no estate or interest in realty.   It is a mere
security for a debt, and possesses only a chattel interest.   A
parol assignment of the debt carries with it all the interest and
estate created by the mortgage.   (9 Cal. 365, 426; 13 Cal.
13; 15 Cal. 293; 16 Cal. 468; 21 Cal. 609; *Lent* v. *Morril,*
25 Cal. 492; see, also, *Green* v. *Hort,* 1 John. 589, and 11
John. 537.)   "An express agreement that land shall be charge-
able with and security for the payment of a debt, though

interpreted as a legal mortgage, will be regarded as a mortgage in equity, and forced against a purchaser without notice." (1 Hilliard on Mort. 613, note.) "An agreement in writing to give a mortgage, or a mortgage defectively executed, or any imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien *which will have precedence of subsequent judgment creditors.*" (1 Leading Cases in Eq. 666, and fourteen cases there cited.) "When it is expressly agreed to give a lien upon lands, Courts of equity have long held that such an agreement was to be treated and considered as giving a specific lien upon the land." (25 Barb. 302; 4 Bosw. 266; *Chase* v. *Peck*, 21 N. Y. 581.)

The result of the foregoing and other authorities of the same class, is that though our mortgage should be found to have been defectively executed, still when taken in connection with the agreement evidenced by the records of the corporation, it must be held to be an equitable mortgage, creating a specific lien, which has *precedence of all subsequent* judgment liens, though it might not be good against subsequent purchasers *without notice.* Whether the omission of the signature is by the party attempting to execute his own deed, or by an agent acting under a power, can make no difference as to the jurisdiction of the Court, because the jurisdiction, in either case, goes on the ground of mistake, accident, or fraud, and does not at all depend upon the subject matter of the contract, or the manner of its attempted execution. Mr. Justice Story (1 Eq. Jurisp. Sec. 94) says: "In the execution of mere powers, it has been said that a Court of equity will interpose and grant relief *on account of accident, as well as of mistake.* And this seems equally true where, by accident, there is a defective execution of the power." Again, at section one hundred and seventy, after stating that the Court will not interfere to compel the execution of a voluntary power, depending solely on the will of the donee, when there has been no attempt to execute it, he says: "But when all has been done to perfect the right, except the mere formal omission(?) in the instru-

ment, Courts of equity interfere to supply the defect, *upon the principle of reforming the instrument* and *correcting mistakes generally*, for the purpose of preventing fraud and injustice of which the party would be guilty by claiming a benefit *under a mere mistake.*"  Mr. Justice Willard, in his work on Equity Jurisprudence, p. 83, says: "Equity sometimes relieves in case of a defective execution of a power, *on the ground of accident or mistake*, but not in case of a non-execution of a power, as distinguishable from a trust."

By the Court, SHAFTER, J.:

In the opinion delivered in this case on the former hearing, we considered, "that it was unnecessary to determine whether the entire transaction was sufficient to constitute an equitable mortgage, for if such should be found to be the case it could not be enforced in the present state of the pleadings, because the decree must be based upon the allegations of the complaint; and it is alleged that the mortgage was executed by the corporation—that is to say, that it is a legal mortgage." Though there is an averment in the complaint that the mortgage, the foreclosure of which is sought in this action, was executed by the company, still the document is set forth in *hæc verba*, and if it is not the mortgage of the defendant by legal as distinguished from equitable conclusion, the averment may be rejected as surplusage.  We held in *Stoddard* v. *Treadwell*, 26 Cal. 303, that a contract may be declared on according to its legal effect or in *hæc verba*.  If the former mode should be adopted, then the defendant may, by the rule of the common law, in a proper case, crave *oyer* of the instrument; and if it appear that its provisions have been misstated, he may set out the contract in *hæc verba* and demur on the ground of variance.  But where a plaintiff himself sets forth the contract in the terms in which it is written, and then proceeds to put a false construction upon its terms, the allegation, as repugnant to the terms, should be regarded as surplusage,

82

to be struck out on motion. *Utile per inutile non vitiatur.* From this it follows that if the complaint in this case discloses all the facts essential to an equitable mortgage binding upon the defendant, then, if the averments are true in fact, the plaintiff is entitled to the benefit of them. And further, by the one hundred and forty-seventh section of the Practice Act, the Court " may grant him any relief consistent with the case made by the complaint and embraced within the issue." We have re-examined the complaint in the light thrown upon it by the re-argument, and are satisfied that it contains all the facts essential to an equitable mortgage. As the facts averred are identical with the facts found or admitted, it is unnecessary to state the form in detail; for, in passing upon the legal effect of the finding, we must necessarily consider and pass upon the legal effect of the averments.

As the statement on motion for new trial does not specify the particulars in which the evidence is alleged to be insufficient, we must assume not only the facts admitted in the pleadings, but those also which are set forth in the findings. It appears from these two sources conjointly, that the defendant corporation on the 16th of April, 1860, by Josiah Bates and Samuel S. Atchinson, its trustees, duly authorized for that purpose, made and delivered to the plaintiff and four others, its promissory note for the sum of forty thousand pounds sterling, payable one day from the date thereof, with interest thereon from date until paid, at the rate of twenty per cent per annum. That the consideration of said note was forty thousand pounds, loaned and advanced by the payees and others to the corporation before the date of the note. That to secure the payment of the note the corporation at the date thereof, by its said trustees, Bates and Atchinson, executed, acknowledged and delivered to the payees the " mortgage " set out in the complaint. In the indenture referred to the parties are described as " The Sierra Nevada Lake Water and Mining Company, a corporation, by their trustees, Josiah Bates and Samuel Atchinson, of the first part, and plaintiff

(and the other payees in the note, naming them) parties of the second part." The conclusion of the indenture is as follows:

" In witness whereof the said parties of the first part have hereunto set their several hands and seals the day and year above written.

" Josiah Bates,         [SEAL.]
" Samuel S. Atchinson."   [SEAL.]

The acknowledgment of the mortgage is to the effect that Bates and Atchinson were personally known to the Notary as trustees of said corporation, and that they personally appeared and acknowledged each for himself that he executed the instrument for the uses and purposes therein mentioned " as and for the free act and deed of said Sierra Nevada Lake Water and Mining Company." At the execution of the note and mortgage Bates was President of the company, and Bates and Atchinson were a majority of the trustees; and at and before that time they agreed for and on behalf of said corporation with the said mortgagees to subscribe the name of " The Sierra Nevada Lake Water and Mining Company " to the said mortgage, and intended so to do, but failed by accident or mistake. The plaintiff was personally interested in the securities to the amount of twenty-four thousand eight hundred and forty-seven pounds sterling, with interest from the date of the note; and the other payees, Ridgway, F. and H. Wedgwood, and Robe, made defendants herein, refused to join as plaintiffs in this action. The remaining defendants are creditors of the Sierra Nevada Lake Water and Mining Company, having judgment liens on the property described in the mortgage, but subsequent thereto.

It is a rule of conveyancing long established, that deeds executed by an attorney or agent must be executed in the name of the constituent. It was so resolved in *Coombes' Case,* (5 Coke, 135, by Fraser,) and the rule was recognized and applied by us in *Echols* v. *Chenery,* 28 Cal. 159. Tested by this rule,

the instrument in suit is not a legal mortgage of the Sierra Nevada Lake Water and Mining Company. The paper is signed and sealed, not by the corporation, but by Bates and Atchinson, acting, so far as the signatures, seals and testatum clause throw any light upon the subject, for themselves and in their own right. Though the mortgage does not bind the company at law, it by no means follows, however, that it may not be asserted against it in equity. We consider it as settled that an agreement under seal, made by an attorney for his principal, though inoperative at law for want of a formal execution in the name of the principal, is binding in equity if the attorney had authority; and if the instrument so defectively executed be a conveyance of real estate, it will be sustained in equity as an agreement to convey, and will be good against the principal, subsequent lien creditors and subsequent purchasers with notice. Or, more precisely stated, an agreement in writing to create a mortgage, or a mortgage defectively executed, or any imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien, which will have precedence of subsequent judgment creditors. (Am. Leading Cases, 605; Leading Cases in Equity, 666, and cases there cited.) The jurisdiction is sometimes put upon the ground that equity will aid the defective execution of a power—sometimes upon the jurisdiction to reform mistakes in written instruments, and sometimes upon the maxim that equity considers that as done which ought to be done. These different modes of expression all amount to the same thing in substance. It was held by this Court in *Beatty* v. *Clark*, 20 Cal. 12, that " though equity will not aid the non-execution of a power, still, where a party undertakes to execute a power, and by mistake does it imperfectly, equity will, in favor of creditors and others peculiarly within its protective favor, aid the defective execution." We held in *Bodley* v. *Ferguson*, 30 Cal. 511, that a deed of land had as a conveyance might be good in equity as a contract to convey; and that the equitable right to the legal title was as available for the purposes of

defense in an action of ejectment, under our system, as the legal title.    We held in *Daggett* v. *Rankin*, 31 Cal. 322, "that an agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate particular property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien upon the property so intended to be mortgaged." We considered further " that the maxim in equity upon which this doctrine rests is that equity looks upon things agreed to be done as actually performed; the true meaning of which is that equity will treat the subject matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been. (See also *Racouillat* v. *Sanserain*, *ante*, 376.)    The facts found or admitted in the case at bar bring it broadly within these principles.    Bates and Atchinson were a majority of the Board of Trustees through which the corporate powers were to be executed.    The corporation gave the note described in the complaint by Bates and Atchinson, they being duly authorized for that purpose; and they also agreed, "for and on behalf of the corporation," to give a mortgage collateral to the note, to which mortgage the name of the company was to be signed; and the failure to do so was the result of accident or mistake.    The power being given, it is apparent on the face of the indenture that the trustees intended to act under the power in the matter of executing the mortgage.    The corporation is named in the document as " party of the first part, by Josiah Bates and Samuel Atchinson, Trustees."    The note which the mortgage was given to secure is described as a note made by the company.    Furthermore, the trustees state in their acknowledgment that they executed the mortgage " as and for the free act and deed of said Sierra Nevada Lake Water and Mining Company."

It is urged that the defective execution of the mortgage was caused by a mistake of law, and that therefore the defective execution cannot be aided.    The answer is that where there is a defective execution of a power, it is a matter of no equita-

ble moment whether the error came of a mistake of law or a mistake of fact. It is enough that the power existed and that there was an attempt to act under it. The relief is not so much by way of reforming the instrument as by aiding its defective execution; which aid is administered through or by the application of the maxims already quoted. Or, as in the class of cases to which this belongs, the instrument defectively executed as a deed is considered as properly executed as a contract for a deed; and therefore as requiring neither reformation nor aid, but as ripe for enforcement according to the methods peculiar to Courts of equity. Under our laws a contract for a mortgage need not be under seal; and when made through an attorney, his authority need not be evidenced by a sealed instrument. (Wood's Digest, 106, Sec. 6; Ang. & Ames on Corps. 193–266.) Though the indenture in this case is under the seals of the trustees, yet when considered as an agreement for a mortgage, it may be treated as a simple contract, nevertheless (*Lawrence* v. *Taylor*, 5 Hill, 107; *Worrall* v. *Munn*, 1 Seld. 239; *Wood* v. *A. & R. R. R. Co.* 4 Seld. 167), and we consider it clear, from the authorities, that it is not indispensable, in order to bind the principal at law even, that such contract should be executed in the name and as the act of the principal. On the contrary, it will be sufficient, if upon the whole instrument it can be gathered from the terms thereof that the party described himself and acts as agent and intends thereby to bind his principals and not to bind himself. (*Haskell* v. *Cornish*, 13 Cal. 45; *McDonald et al.* v. *Bear River and A. W. and Mining Company*, 13 Cal. 221.)

The other objections taken by the appellants to the judgment, though not pressed in argument, have been fully considered by us, and they are all overruled.

Judgment affirmed.