ALLIS v. JONES et al.

SKEEN et al. v. ALLIS.

(Circuit Court, D. Nebraska. 1891.)

1. CORPORATION—MORTGAGE—ULTRA VIRES.
    Where the indebtedness that a corporation is authorized by its charter to contract is limited, the objection that a mortgage for a sum in excess of this amount is *ultra vires* cannot be successfully urged by an unsecured creditor, who became such after the mortgage was executed, and whose claim is open to the same objection.

2. SAME—OMISSION OF SEAL.
    Where a mortgage is given by a corporation to secure a *bona fide* debt, and in a proceeding by an unsecured creditor to set it aside its execution is admitted, and its validity asserted by the company and all the stockholders and officers thereof, the mere omission to attach the corporate seal will not have the effect to invalidate it.

3. SAME—CORPORATE AUTHORITY—PAROL EVIDENCE.
    Upon an issue as to whether the execution of a mortgage by the president and secretary of a corporation was authorized by its board of directors, in whom the control and management of its affairs was vested, parol evidence is admissible to prove the action of the board, when the record of the meeting fails to state it.

4. INSOLVENCY—PREFERENCE.
    A mortgage given for a *bona fide* debt by a creditor in failing circumstances, but containing no trust, secret or expressed, in favor of any one else, though in effect a preference, is not invalid under the Nebraska assignment laws.

In Equity.
*Harwood, Ames & Kelly*, for complainant and cross-complainant Skeen.
*A. J. Poppleton*, for cross-complainant Red Cloud National Bank.
*G. M. Lambertson* and *Case & McNeny*, for cross-complainants First National Bank of Denver and Red Cloud National Bank.

CALDWELL, J. The plaintiff, alleging that he is a general creditor of the defendant corporations the Red Cloud Milling Company and the Alma Milling Company in the sum of $11,950, files this bill to annul certain mortgages executed by these milling companies to the Red Cloud National Bank and the First National Bank of Denver, and prays that the affairs of the milling companies may be wound up, and their assets distributed. The plaintiff holds as collateral security for his debt certain shares of the capital stock of the milling companies belonging to the defendant Jones, and by him pledged as security for the plaintiff's debt against the companies. The defendant Skeen filed a cross-bill, making the same allegations and praying for the same relief as the plaintiff; but confessedly, on the pleadings and proofs, his debt is the individual indebtedness of the defendant Jones, and not the debt of the milling companies, and his cross-bill must for that reason be dismissed. The fact that he holds stock of the milling companies belonging to and pledged by his debtor, Jones, as collateral security for his debt gives him no standing in court on the proofs in this case, for, in any event, it is conceded the companies are hopelessly insolvent, and the stock worthless. The simple pledge of the stock by its owner, Jones, did not affect his right to vote and act in good

faith as a stockholder of the milling companies. 1 Mor. Priv. Corp. § 483. The milling companies have filed their answers, admitting the execution of the mortgages, and alleging that they were executed for a *bona fide* indebtedness due from the companies, respectively, to the banks, and averring that the debts of the plaintiff and the defendant Skeen were the individual debts of the defendant Jones, and not the debts of the milling companies. The banks filed their answer, denying the allegations of the bill, and also filed cross-bills, praying for a foreclosure of their mortgages. Numerous other creditors of the milling companies have intervened and answered, but there is no contest at present over their claims. All parties concede the priority of the mechanics' liens, and the only issues now to be determined are those arising on the plaintiff's original bill and the cross-bill of Skeen, who makes common cause with the plaintiff, and on the cross-bills of the banks, seeking a foreclosure of their mortgages. The mortgages to the banks are alleged to be void for the following reasons:

"(1) Because, by the articles of incorporation of both of said milling companies, the management and control of the affairs of said corporations is vested in a board of five directors, who alone have the power to authorize the execution of said instruments by the president and secretary, and who in each and all of these instances failed to act.

"(2) Because none of said instruments were attested by the seal of said corporation, or any seal; nor does it appear that any form or description of seal was ever adopted by either of said corporations.

"(3) Because said act is in excess of the corporate powers, and *ultra vires*.

"(4) Because the giving of said mortgages and bills of sale on all of the property of the defendant corporations, and the yielding of immediate dominion over the same, is, in contemplation of law, an assignment, and void under the general assignment laws of the state of Nebraska.

"(5) With respect to the notes, bills of sale, and mortgages to the First National Bank of Denver, same are void because grossly in excess of the amount due said defendant."

Assuming that the plaintiff is a general creditor of the milling companies, and that, as a general creditor, he can maintain a bill of this kind, we will proceed to inquire into the validity of the objections to the mortgages to the banks.

1. The proof shows that the first objection is not well founded in fact. A majority of the board of directors and all the stockholders directed the execution of the mortgages. If the authority to execute them before they were given was not in all respects regular, their execution was afterwards ratified. What may be authorized in advance may be ratified afterwards. Mor. Priv. Corp. §§ 228–231, 623–625. Parol evidence is admissible to prove the action of the board of directors or stockholders where the record fails to state it. *U. S. v. Dandridge,* 12 Wheat. 72. The opinion is by Mr. Justice STORY. *Mining Co. v. Anglo-Californian Bank,* 104 U. S. 192; *Eureka Co. v. Bailey Co.,* 11 Wall. 488; Whart. Ev. § 663; *Davidson v. Bridgeport,* 8 Conn. 472; *Ratcliff v. Teters,* 27 Ohio St. 66; *Taymouth v. Koehler,* 35 Mich. 22; *Bank v. Kortright,* 22 Wend. 348.

2. The omission to attach the corporate seal to the mortgages is not fatal to their validity in equity. The companies admit their execution

and assert their validity. The owners of all the stock of the companies assert their validity. They were given for debts actually due from the companies to the banks. The officers and stockholders of the milling companies had no personal interest in the debts secured by the mortgages. No part of the money belonged to them, nor were any of them sureties for its payment. On this state of facts, it is not necessary to inquire whether these mortgages are legal and sufficient securities at law against the general creditors of the companies. They are undoubtedly good in equity. *Love* v. *Mining Co.*, 32 Cal. 639; *Chase* v. *Peck*, 21 N. Y. 581; *Jackson* v. *Parkhurst*, 4 Wend. 369; *In re Howe*, 1 Paige, 125; *Payne* v. *Wilson*, 74 N. Y. 348; Pom. Eq. Jur. §§ 383, 1237; *Lake* v. *Dowd*, 10 Ohio, 415; *Daggett* v. *Rankin*, 31 Cal. 321; *Abbott* v. *Godfroy's Heirs*, 1 Mich. 179; *Peckham* v. *Haddock*, 36 Ill. 39; *Racouillat* v. *Sansevain*, 32 Cal. 376; *Jones, Mortg.* §§ 166, 168; *Miller* v. *Railroad Co.*, 36 Vt. 452; *Gale* v. *Morris*, 29 N. J. Eq. 222; Amer. Lead. Cas. 605; 1 Lead. Cas. Eq. (3d Amer. Ed.) 666, and cases there cited; Mor. Priv. Corp. § 338. In *Koehler* v. *Iron Co.*, 2 Black, 716, the court declined to treat a mortgage of a corporation not under seal as good in equity, because it was declared on as a legal, and not an equitable, mortgage. To obviate that objection the banks are granted leave to amend their cross-bills by adding a special prayer, to the effect that, if the court should hold them ineffectual as legal mortgages, that they may be held and treated as equitable mortgages. The court may do this. *Hardin* v. *Boyd*, 113 U. S. 756, 5 Sup. Ct. Rep. 771.

3. The mortgages were given to secure an indebtedness in excess of the amount of debts the companies, by their charters, were authorized to contract, and it is said this renders the evidences of the indebtedness, and the mortgages given to secure it, *ultra vires* and void. But on the facts of this case this position cannot be maintained. The money was received by the companies, and used in conducting and carrying on their legitimate corporate business, with the knowledge and consent of all the officers and stockholders. On these facts the banks are entitled to be repaid their money, and the companies could execute a valid security for its payment. Mor. Priv. Corp. §§ 714–716; Jones, Mortg. § 127; *Bank* v. *Matthews*, 98 U. S. 621; *Jones* v. *Habersham*, 107 U. S. 188, 2 Sup. Ct. Rep. 336; *Railway Co.* v. *McCarthy*, 96 U. S. 267. Skeen cannot be heard to urge this objection, because he is not a creditor of the milling companies, and Allis became such, if at all, after the debts to the banks had been created, and it would seem, therefore, that he is in no plight to raise the question. The written promise of the milling companies, executed by their secretary and treasurer, to pay the plaintiff's debt, under all the circumstances of this case, made it the debt of the companies. But an application to the plaintiff's case of the strict rules which he seeks to have applied to the bank's claims and mortgages would undoubtedly undermine his own case, and leave him without any claim against the companies.

4. The execution of the mortgages by the companies to the banks did not constitute an assignment for the benefit of creditors under the laws

of Nebraska. The mortgages were given for *bona fide* debts due from the mortgagor to the mortgagees. There was no trust, secret or expressed, in favor of any one else. This is a question of local law, and the latest utterances of the supreme court of Nebraska show very clearly that the execution of these mortgages was not prohibited by, or a fraud on, the assignment laws of that state, but were lawful and valid transactions. *Britton* v. *Boyer*, 27 Neb. 522, 43 N. W. Rep. 356; *Davis* v. *Scott*, 27 Neb. 642, 43 N. W. Rep. 407. In the last case cited the court say:

"That this mortgage was given to secure *bona fide* debts seems to be fully established, and in this state, under the holdings of this court, a creditor in failing circumstances may prefer his creditors. Justice would be subserved by requiring an equitable distribution of the property between all creditors in such cases, and a change in the law on that subject is worthy of the consideration of the legislature. But the common law in regard to preferences is in full force in this state, and, as that law recognizes the right of a failing debtor to prefer his creditors, error cannot be assigned because of such preference. The mortgagee, therefore, being a *bona fide* creditor, and having a prior lien to that of the attaching creditors, was entitled to the possession of the property until a sufficient amount had been sold to satisfy his claims."

A private corporation, in a failing condition, has the same common-law right that a natural person has to prefer, by way of payment or by giving security on its property, one or more of its *bona fide* creditors, to the exclusion of others. Mor. Priv. Corp. § 802, and cases cited; Id. § 335. The plaintiff will be allowed to prove in the master's office for the amount of his debt, as an unsecured claim, to be paid *pro rata* with other unsecured debts, out of the surplus, if any, that remains after satisfying the mechanics' liens, mortgages, and other debts that are liens on the property; and as to all further relief the bill is dismissed.

The complainants in the cross-bills (the banks) are entitled to a decree foreclosing their respective mortgages, as prayed.

Let a reference be made to the master to ascertain and report without delay the order of priority and amount of the several liens on the property.