FOURTH NAT. BANK OF ST. LOUIS, MO., v. CAMDEN LUMBER CO. et al.

(Circuit Court, W. D. Arkansas, Texarkana Division. December 22, 1905.)

1. CORPORATIONS—VALIDITY OF MORTGAGE—USE OF SEAL.

The omission of a seal from a mortgage made by a business corporation is not fatal to its validity in equity under the Constitution and laws of Arkansas, which contain no provision requiring the use of a seal by such corporations, while the Constitution abolishes the distinction between sealed and unsealed instruments made by individuals.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1860.]

2. SAME—ESTOPPEL—RATIFICATION.

A trust deed executed in behalf of a corporation by its president to secure the purchase price of property which the corporation bought and a mortgage given partly in renewal and in part to secure another just indebtedness cannot be impeached for want of a seal, nor because they were not formally authorized at a meeting of directors where the property was retained and used in the corporation's business and payments were made on the indebtedness with full knowledge of the transaction on the part of the officers and stockholders.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 1714.]

3. CHATTEL MORTGAGE—VALIDITY—STOCK OF MERCHANDISE.

Under the law of Arkansas a mortgage on a stock of merchandise which is left in control of the mortgagor to be sold in the usual course of business is invalid.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Chattel Mortgages, § 398.]

In Equity.

Rose, Hemingway & Rose, for complainant.

Gaughan & Sifford and Smead & Powell, for defendant Camden Lumber Co.

N. S. Brown, for defendant Cochran.

ROGERS, District Judge. The bill in this case was filed under the statute (Kirby's Dig. p. 370, tit. "Insolvent Corporations") to wind up the affairs of the corporation, the Camden Lumber Company. On the evidence adduced the court is of the opinion that the defendant corporation is insolvent. The assets, when the bill was

142 F.—17

filed, were taken charge of by a receiver appointed by this court, and by consent of the parties ordered sold, the proceeds to be subject to the future orders of the court. The Columbia County. Bank has intervened by bill to foreclose a deed of trust and mortgage on practically all the assets of the defendant corporation. The facts pertinent to the questions raised by the pleadings for foreclosure are these: The defendant corporation had been engaged in the sawmill business at Elliott, in Ouachita county, Ark.; but its plant at that place had been closed, presumably for want of timber. The Davis Lumber Company had failed at Lumber; and, being largely indebted to the Columbia County Bank, the latter became the owner of its property, consisting of timber lands, certain options on timber on other lands, mill machinery, planing mill, a lumber railroad, etc. It sold this property situate at Lumber to the Camden Lumber Company, and took its notes and deed of trust in controversy to secure the purchase money. The deed of trust covered, not only the property sold, but other properties then situate at Elliott, which were removed and put at Lumber, consisting generally of iron for extensions of the railroad at Lumber, and other personal property. The notes were not paid, and the mortgage now sought to be foreclosed was given to better secure the indebtedness, and to make certain descriptions of some of the property contained in the deed of trust more certain and definite, and also to secure an additional indebtedness of $5,000 due the Columbia County Bank. At the time this sale took place there were only three stockholders of the Camden Lumber Company—J. T. Burkett, P. C. Blain, and John J. Cochran. They were the directors and officers of the company; Burkett being the president and treasurer, Cochran vice president and secretary, and Blain, general manager. The deed of trust and mortgage was executed by Burkett, and neither bears the seal of the corporation.

The deed of trust and mortgage are both assailed on the following grounds: First, that Burkett, who executed the deed of trust and mortgage, was not president of the company, and therefore had no right to execute them; second, that neither the deed of trust or mortgage bears any seal of the corporation, and is therefore invalid; third, that there was never any authority by the stockholders or board of directors of the Camden Lumber Company for Burkett to execute either the mortgage or deed of trust, and therefore they are invalid; fourth, it is alleged that the debt of the Columbia County Bank was not the original debt for the purchase money, and that the original debt for the purchase money has been paid.

The mortgage in controversy was dated August 4, 1904. As early as October 16, 1903, Mr. Cochran himself wrote a letter to the Columbia County Bank on stationery caused to be printed by himself in St. Louis, in which he held out Burkett as president and Cochran as vice president and Blain as manager, and stationery used by the officers and employés of the Camden Lumber Company in writing letters to himself was similarly printed; and the positive proof of both Burkett and Blain, his two co-directors, is to the effect that Burkett was president. The minutes of the board of directors of the

Camden Lumber Company also show that on April 18, 1903, at a meeting of the stockholders of the Camden Lumber Company, at Elliott, Ark., at which Blain and Burkett were present in person, Cochran, by his proxy, John T. Burkett, was elected president and treasurer, John J. Cochran vice president and secretary, and P. C. Blain general manager. There is no evidence to the contrary, except the vague statement of Cochran. I conclude, therefore, that the proof is clear that Burkett was president at the time the mortgage and deed of trust were executed.

The second and third grounds on which the deed of trust and mortgage are assailed are that neither of them bear the seal of the Camden Lumber Company, and that the Camden Lumber Company, neither by its board of directors or stockholders, had ever authorized the execution of the mortgage and deed of trust. These two contentions may be considered together. Neither of the instruments bears any seal. In the state of Arkansas private seals between individuals were abolished by the Constitution of 1868. See Const. 1868, art. 15, § 16. By section 1 of the Schedule of the Constitution of Arkansas, adopted in the year 1874, it is provided that:

"Until otherwise provided by law, no distinction shall exist between sealed and unsealed instruments, concerning contracts between individuals executed since the adoption of the Constitution of 1868. * * * "

Under the statute of this state (see Kirby's Dig. p. 349, tit. "Manufacturing and Other Business Corporations") there is no provision requiring a corporation of such a character as the Camden Lumber Company to use a seal at all. Section 850, at page 353, of that act, makes such a corporation capable "to have a common seal and to alter the same at pleasure"; but it makes no provision whatever that in business transactions of any kind a seal shall be used, and neither deed nor mortgages in this state between individuals are required to bear a private seal of any character. It was the common law that a corporation could only act by its seal, and especially was this true in reference to transactions in regard to real estate. For many years such was the rule in this country. The rule, however, is laid down in the tenth volume of Cyclopedia of Law and Procedure, at page 1008, as follows:

"The manner by which real estate may be transferred by a corporation, either domestic or foreign, is a matter which is within the power of the state in which such real estate is situated to regulate. It is therefore competent for a state to abolish the use of seals in the conveyance of real estate situated within its limits, whether by individuals or by corporations. But, except in those states or territories where this has been done, the rule of the common law remains that a deed conveying land, whether in fee or whether by mortgage, in order to be valid and effectual without the aid of equity, must be executed by the use of the corporate seal. (iv) But even in cases where a seal is required, when the instrument is that of a natural person, a court of equity will not treat the instrument as void when executed by a corporation without the use of its seal, but, if necessary, will rather compel the corporation to affix its seal. In other words, where the principles of equity subsist, an unsealed bond, if the omission of the seal was due to inadvertence, is good, and not bad. So the failure to attach the corporate seal to a mortgage executed by a corporation is not fatal to its validity in equity."

In Cook on Stockholders the author lays down the rule to this effect:

"The corporate seal need not be attached to a corporate contract, unless a similar contract, when made by an individual, would require a seal."

There are many cases cited in the footnotes to the text to both of these authors. In Skeen et al. v. Allis (C. C.) 45 Fed. 149, Judge Caldwell, at circuit, recognized this rule, and said:

"The omission to attach the corporate seal to the mortgages is not fatal to their validity in equity. The companies admit their execution and assert their validity. The owners of the stock of the companies assert their validity. They were given for debts actually due from the companies to the banks. The officers and stockholders of the milling companies had no personal interest in the debts secured by the mortgages. No part of the money belonged to them, nor were any of them sureties for its payment. On this state of facts it is not necessary to inquire whether these mortgages are legal and sufficient securities at law against the general creditors of the companies. They are undoubtedly good in equity"—citing many cases.

He also said in the same case:

"In Koehler v. Iron Co., 2 Black, 716, 17 L. Ed. 339, the court declined to treat a mortgage of a corporation not under seal as good in equity, because it was declared on as a legal, and not an equitable mortgage. To obviate that objection, the banks are granted leave to amend their cross-bills by adding a special prayer to the effect that, if the court should hold them ineffectual as legal mortgages that they may be held and treated as equitable mortgages. The court may do this. Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1141."

The same may be done here, if deemed necessary. I conclude, therefore, that the absence of the seal does not invalidate either the deed of trust or the mortgage. In this same connection the question then arises as to whether or not there was any authority for Burkett to execute the mortgage. It is denied by Cochran, who owned a large majority of the stock in the Camden Lumber Company, that any authority was ever given to Burkett to execute the deed of trust or mortgage in controversy; but he admits that a month before the purchase was made and the deed of trust executed, he knew that negotiations were going on between Blain and Burkett for the purchase of the property, and that he supposed that a deed of trust or mortgage would be given upon the properties purchased to secure the purchase money. It is shown, also, that he himself went to Arkansas before the purchase was consummated, and had a conference at Smead & Powell's office, who were the consulting attorneys at Camden, Ark., with reference to the purchase of the property; but he denies that any meeting was ever held afterward, although he was advised that it was necessary, or that any authority was given to Burkett to execute the deed of trust or mortgage. The proof, however, is overwhelming against him, not only to the effect that he attended the meeting at which the authority was given, but that the authority was given. Moreover, his own admission to the officers of the bank (which was testified to by them, and not contradicted by him) was to the same effect. In addition to that, as stated above, he made payments on account of this indebtedness for a long time, and was at the plant more than once after the deed of trust and mortgage were executed,

It is a strain upon credulity to suppose that Mr. Cochran, who owned two-thirds of the stock in a plant, estimated by Burkett, its president, to be worth in the neighborhood of $300,000, would be ignorant of the existence of a mortgage and deed of trust covering the entire plant, and should for a considerable time after the execution of the deed of trust make payments upon it, and even continue to make payments after the mortgage was given, should carry on a correspondence with Burkett and the sales agent, Jones, and with the Columbia County Bank, should visit the plant and see what was there, and be advised of the amount of railroad that had been constructed, and that the iron and machinery had been taken from Elliott to build the railroad and to establish a planing mill plant at Lumber, and should be the sales agent of the entire output of the concern, in violation of the very terms of the mortgage upon which he was from time to time making payments as the lumber was sold, and yet be ignorant of the existence of the mortgage and deed of trust. That he was not ignorant I think is clearly shown by the testimony in the case. And if there had been no authority for the execution of the mortgage clearly his actions and conduct constituted a ratification thereof. Judge Caldwell, in the case of Skeen v. Allis, supra, says, in reference to the execution of mortgages:

"If the authority to execute them before they were given was not in all respects regular, their execution was afterwards ratified. What may be authorized in advance may be ratified afterwards. Mor. Priv. Corp. 228–231, 623–625. Parol evidence is admissible to prove the action of the board of directors or stockholders where the record fails to state it."

It may be, and I think it is, true that no meeting of the stockholders or board of directors of the Camden Lumber Company was held at Elliott on the 2d of May, 1903, and that the date of those minutes is erroneous; but that such a meeting was held, and such authority given, I have little or no doubt whatever. Such a meeting had been advised by the law firm of Smead & Powell, when Burkett, Blain, and Cochran were all present, and the proof shows they all left Smead & Powell's office, in Camden, and went to Elliott for that purpose. Burkett and Blain swear the meeting was held, Cochran swears it was not, and other witnesses swear that Cochran admitted that the meeting had been held and the authority given. There are no minutes of the board of directors of the Camden Lumber Company showing that any meeting was held authorizing the execution of the mortgage; but the weight of the testimony is in favor of the fact that such a meeting was held, and that the same was legal. Whether such is the case or not, the deed of trust was executed and the court thinks has been fully ratified by Cochran, and he cannot now be heard to say that this deed of trust and mortgage, the former executed to secure the purchase money of property which the company still holds and has used from the date of the purchase down to the present day, are invalid, and that the deed of trust, which was given in part to secure the same debt, coupled with an additional debt, equally as honest, is void, either for want of a seal or for want of authority to execute it. Such a conclusion would be grossly inequitable and unjust, and would, in fact, be depriving the Columbia County Bank of its property and

permitting the Camden Lumber Company's other creditors to hold it for the satisfaction of their debts. In Skeen et al. v. Allis, supra, at page 150, Judge Caldwell said:

"The money was received by the companies, and used in conducting and carrying on their legitimate corporate business, with the knowledge and consent of all the officers and stockholders. On these facts the banks are entitled to be repaid their money, and the companies could execute a valid security for its payment."

In this case the property of the Columbia County Bank—i. e., the sawmill plant at Lumber—was received by the Camden Lumber Company, and has been used in conducting and carrying on its legitimate corporate business, with the full knowledge and consent of all the officers and stockholders. On these facts the plaintiff is entitled to be paid the purchase money for the plant, and the Camden Lumber Company could execute a valid security for its payment. The deed of trust and mortgage were executed for that purpose, and were valid, and should be enforced. However, the deed of trust and the mortgage covered a stock of merchandise, and this stock of merchandise, so far as the proof shows, was left in the control of the Camden Lumber Company, to be disposed of in the usual and ordinary course of business. Under the decisions of the Supreme Court of this state the trust deed and mortgage are both invalid as to the stock of merchandise; but only to that extent. This is because the mortgage of a stock of goods, which is being sold and replenished and the proceeds used by the mortgagor, operates to hinder and delay other creditors in the collection of their debts; but its invalidity as to the merchandise in no way affects its validity as to other properties of a different nature.

As to the fourth ground on which the mortgage is assailed—i. e., that the notes and mortgage and deed of trust were not given to secure the original debt for the purchase money—the answer is that there is no evidence to sustain it. The proof is conclusive that the purchase money was for the sawmill plant at Lumber sold by the complainant to the Camden Lumber Company, and has never been paid. True the $5,000 note secured by the mortgage does not appear to have been for the purchase money, but that note has been paid, except a nominal sum; and at all events the note was given for money which went into the plant, and therefore carries with it as strong an equity as if it had been for the purchase money. The Camden Lumber Company got the full benefit of it, and its properties have in no wise been diminished by it, or other creditors prejudiced thereby. The small balance due on that note is secured by mortgage, and should be paid.

A decree is ordered on the original bill, winding up the affairs of the corporation in conformity with the provisions of the statute for winding up insolvent corporations, and a decree is ordered on the cross-bill, foreclosing the deed of trust and the mortgage upon all the properties described therein, except upon the stock of merchandise, which property is now in the hands of the receiver, and the proceeds of the sale, when made, must first go to the payment of the debt secured by the deed of trust and the mortgage in controversy, the residue thereof to be distributed as the court may hereafter direct.